UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:07-CV-123-FL

| CATHERINE W. HARGROVE, | ) | |
|---|---|---|
| Plaintiff/Claimant, | ) ) ) | |
| v. | ) ) | **MEMORANDUM AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Catherine W. Hargrove ("Claimant") filed this action pursuant to 42 U.S.C. § 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Supplemental Security Income ("SSI") payments. Claimant responded to Defendant's motion and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings, and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## STATEMENT OF THE CASE

Claimant filed applications for SSI and DIB payments on 30 July 2001 and 15 August 2001, respectively, alleging disability beginning 22 November 1991. (R. 19). Explaining that Claimant had filed previous applications which were either denied or dismissed, the ALJ found that the present case involved only the application for SSI benefits for the period beginning 29

August 2000. (R. 20). A hearing before the Administrative Law Judge ("ALJ") was held on 18 May 2005, at which Claimant was represented by a non-attorney, and a witness and a vocational expert ("VE") appeared and testified. (R. 47-85). On 16 July 2005, the ALJ issued a decision denying Claimant's claim. (R. 16-29). Claimant then requested a review of the ALJ's decision by the Appeals Council, and submitted additional evidence as part of her request. (R. 6, 556-589). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on 18 May 2007. (R. 7-10). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

In its consideration of the final agency determination, this Court must remain mindful of the standard by which it reviews the administrative decision. *See e.g., Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 320-21 (4th Cir. 2008) (citations omitted) (explaining standards of review are an expression of judicial restraint safeguarding the "superior vantage points of those entrusted with primary decisional responsibility"). The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of

evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform...past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme

3

identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate pertinent findings and conclusions based on the technique into his written decision. *Id.* § 404.1520a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to give controlling weight to the opinion of Claimant's treating physician; and (2) improper assessment of Claimant's credibility. Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 10, 14. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I.  ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 27). Next, the ALJ determined Claimant had the following severe impairments: (1) chronic pain; (2) fibromyalgia; and (3) cervical spondylosis. *Id.* The ALJ also found Claimant had a nonsevere impairment of hypertension. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the ability to sit, stand and walk six

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing

4

hours in a eight-hour workday with a sit or stand option and limited further by a limitation to simple, routine, repetitive tasks in a low production environment and limited interpersonal conduct. *Id.* In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 27). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work. (R. 28). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. *Id.*

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was fifty-one years old and unemployed. (R. 51). Claimant attained a tenth grade education, never obtained a GED but had attended a community college and graduated as a nursing assistant. (R. 52). Claimant last worked full-time in 1991 and since that time has performed volunteer work only. (R. 56-57).

Claimant testified that she is unable to work due to migraine headaches, high blood pressure, diabetes and chronic pain in her back, legs, shoulder, neck, feet and arms. (R. 57, 61, 68). Claimant attends a pain clinic up to two times per month where she receives multiple injections in her neck and middle and lower back; however, Claimant stated her pain treatment provides minimal relief and rated her pain a ten on a ten-point scale. (R. 58-59). Claimant explained further that her migraine headache is "constantly going on...[i]t rests for a few minutes but then it come (sic) back" and as a result, she cannot tolerate lights or noise and she vomits

---

a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

5

often. (R. 59-60). Claimant stated her blood pressure is always elevated as a result of her chronic pain. (R. 59). Claimant testified to taking numerous medications, including Darvocet, Clonidine, Verelan, Motrin, Relpax, Soma, Keppra, Tylenol and Ultracet. (R. 62, 64-67). Claimant also takes Prozac for depression; however, she no longer receives counseling. (R. 71-72).

As for daily activities, Claimant testified that she either rests in a recliner or walks because she is unable to sit or stand for very long. (R. 60, 70). Claimant does not socialize or shop due to pain and an inability to tolerate noise. *Id.* Claimant does not perform any household chores, rarely cooks, keeps her TV on a "sound channel," reads the Bible and other religious material and drives only to her medical appointments. (R. 61, 70-71). Claimant is capable of maintaining personal hygiene; however, she has difficulty combing her hair due to arm pain and showers only twice a week due to her difficulty with standing. (R. 62). Claimant can stand approximately ten minutes, sit for almost an hour and lift no more than five pounds. (R. 72-73).

### III. Kiriston Henderson's Testimony at the Administrative Hearing

Kiriston Henderson, Claimant's son, also testified at the administrative hearing. (R. 74-77). Mr. Henderson resides with Claimant and performs all of the housework, provides income and pays the bills. (R. 75). Mr. Henderson explained Claimant "really can't do anything" due to medication and pain and that Claimant cannot drive, cook or sleep. *Id.* Mr. Henderson stated further that Claimant's headaches are "serious" and that Claimant cries daily. (R. 75-76).

## IV. Vocational Expert's Testimony at the Administrative Hearing

Stephen Carpenter, M.Ed., Certified Rehabilitation Counselor, testified as a VE at the administrative hearing. (R. 118, 79-83). After the VE's testimony regarding Claimant's past work experience, the ALJ posed the following hypothetical:

> [A]ssume we have [an individual] of the same age, education and vocational background as...Claimant. [F]urther assume that this person is capable of light work exertionally, but would be limited to the performance of simple, routine, repetitive tasks in a low production environment with limited interpersonal contact. Given those restrictions could you cite any jobs that such a person could perform?

(R. 80). The VE responded the individual could perform the following jobs at the light, unskilled level: (1) cleaner - DOT 323.687-014, SVP 2, at least 5,000 locally and 500,000 nationally; (2) flatwork tier - DOT 361.587-010, SVP 2, at least 2,000 locally and 200,000 nationally; and (3) stock checker - DOT 299.667-014, SVP 2, at least 2,000 locally and 200,000 nationally. (R. 81). The VE testified that there were no transferable skills from Claimant's past relevant work as a certified nursing assistant to sedentary or light work. *Id.* The VE testified further that if a sit or stand option was added to the above hypothetical, the individual could perform the following light, unskilled jobs: (1) flatwork tier; (2) office helper - DOT 239.567-010, SVP 2, at least 2,000 locally and 200,000 nationally; (3) silver wrapper in the hotel and restaurant industry - DOT 318.687-018; SVP 1; at least 1,000 locally and 100,000 nationally. (R. 82-83).

## DISCUSSION

### I. The additional evidence submitted to the Appeals Council is not material.

The Appeals Council incorporated the following additional evidence into the record: (1) handwritten progress notes from Francine Chavis, M.D., dated 15 April 2005 through 31

7

March 2006 (R. 557-59); and (2) medical records from Carl Smith, M.D., dated 29 June 2005 through 17 January 2006 (R. 561-79) and 12 September 2006 through 15 February 2007 (R. 585-89). Although the Appeals Council discounted the additional evidence[2] (R. 5), this Court is obliged to review this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y, Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (explaining where the Appeals Council incorporates additional evidence into the administrative record, the reviewing court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [ALJ's] findings"); *see also Daniels v. Astrue*, 564 F. Supp. 2d 536, 538 (E.D.N.C. 2008) (explaining additional evidence incorporated into the record "must be considered in a determination of whether the [ALJ's] decision was supported by substantial evidence").

The Appeals Council must consider additional evidence if (1) the evidence is new; i.e., not duplicative or cumulative of that which is already in the record; (2) the evidence is material; i.e., there exists a reasonable possibility that the new evidence would have changed the outcome; and (3) the evidence "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 416.1470(b); *see also Wilkins*, 953 F.2d at 96 (citations omitted). In this case, the relevant time period extends from 29 August 2000 (Claimant's alleged disability onset date) to 16 July 2005 (the date of the ALJ's decision). (R. 15, 20, 66). The fact that the additional evidence was generated after the ALJ's decision does not automatically disqualify it from consideration. However, the claimant must do more than simply submit medical records which

---

[2] By letter dated 18 May 2007, the Appeals Council indicated it "considered the reasons [raised in your representative's letter] and the additional evidence listed on the enclosed Order of Appeals Council [but found] that this information does not provide a basis for changing the [ALJ's] decision." (R. 7-8).

postdate the hearing since the subsequently-generated records, standing alone, are insufficient to satisfy the materiality requirement. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b). In particular, the claimant must show how the new evidence relates to the claimant's medical condition as it was at the time of the hearing. *Id.*; *see also Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990) (explaining medical evidence obtained after an ALJ decision is material if it relates to the claimant's condition on or before the date of the ALJ's decision). However, if the new evidence shows merely that the claimant's condition deteriorated after the administrative hearing, the evidence is not relevant to the claimant's condition during the time at issue. *See Rhodes v. Barnhart*, 2005 U.S. Dist. LEXIS 42876, at *33-34 (W.D.N.C. Mar. 30, 2005), *aff'd*, 176 Fed. Appx. 419 (4th Cir. Apr. 20, 2006) (new evidence must relate to the time period for which benefits were denied and may not merely be evidence of a later-acquired disability or of subsequent deterioration of the previously non-disabling condition) (citing *Raglin v. Massanari*, 39 Fed. Appx. 777, 779 (3d Cir. 2002)).

As an initial matter, the Court notes that Claimant has not explained the relevance of any of the above evidence and in fact, fails to cite Dr. Chavis' medical records[3] in her brief. Regardless, the Court finds the records from Dr. Chavis add nothing new to the record that was before the ALJ and are merely cumulative. In particular, these records contain medication lists, blood pressure data (R. 558-59) and complaints of sleep walking (R. 557), weight gain (R. 557), depression (R. 558) and severe headaches (R. 558). However, the ALJ's decision cites the numerous medications prescribed by Claimant's physicians and acknowledges Claimant's treatment for depression, headaches and hypertension. (R. 22, 24-25).

---

[3] With respect to the April 2005 through March 2006 progress notes, the Court is unable to decipher most of the information as many of the handwritten notes are illegible.

9

As for the records from Dr. Smith, Claimant's treating pain physician, the Court finds the records immaterial in that they are cumulative. In particular, these records include treatment for neck and back pain in the form of multiple trigger point injections (R. 561, 565-67, 572-74, 579) C5-6 and C6-7 bilateral facet injections and L4-5 midline epidural injections (R. 562, 575, 586). Claimant's ankle injury occurred subsequent to the ALJ's decision and has no impact on her alleged impairments. (R. 570-71). The ALJ's decision acknowledges Claimant's receipt of trigger point injections by both Gloria Lui, M.D., Claimant's former pain physician, (R. 23, 481-82, 497, 506) and Dr. Smith (R. 24, 526, 561). The ALJ's decision acknowledges further Claimant's 11 April 2005 visit wherein Dr. Smith noted that Claimant's spurling compression test was positive for right-sided cervical pain and radiation pain down the right forearm and scheduled Claimant for bilateral injections at C5-6 and C6-7. (R. 24, 529). These records also include treatment for a sprained ankle in September 2006, an injury occurring subsequent to the ALJ's decision. (R. 568-71). Moreover, some of the records are immaterial for the additional reason that they relate to a time more than six months after the ALJ's decision and no information is contained within these records relating Dr. Smith's findings to Claimant's condition during the relevant time period. *See* (R. 561-64, 585-89); *see also Edwards v. Astrue*, 2008 WL 474128, at *9 (W.D. Va. Feb. 20, 2008) ("The [additional records] do not relate back to the relevant time period as they were...[completed] over 6 months after the ALJ rendered his decision.").

Finally, in addition to the impairments acknowledged by the ALJ, Dr. Smith's progress notes include other diagnoses,[4] including cervical facet syndrome, L4-5 disc bulge, noninsulin

---

[4] Dr. Smith's progress notes indicate further that Claimant's headaches "are under control with Relpax[,] [t]he Soma helps and Cymbalta and Topamax also seem to help the headaches." (R. 589).

10

dependent diabetes, bilateral lumbar radiculitis and cervical herniated disc disease versus radiculopathy. (R. 561, 565-67, 571-74, 579, 585, 589). Relying on the new evidence, Claimant emphasizes that Dr. Smith's "diagnoses expanded, reflecting even more severe impairments." Pl.'s Mem. at 11. However, given Dr. Smith's progress notes indicate later-acquired impairments occurring subsequent to the ALJ's decision, they "simply [have] no bearing on whether [Claimant] was disabled during the relevant period of time." *Rhodes*, 2005 U.S. Dist. LEXIS 42876, at *31. If Claimant believes she is now disabled based on a deterioration or later-acquired impairments subsequent to the ALJ's decision, "[Claimant's] remedy is to file a new application." *Adams v. Barnhart*, 2006 U.S. Dist. LEXIS 96822, at *26 (W.D.N.C. 2006) (quoting *Bowles v. Barnhart*, 392 F. Supp. 2d 738, 745-46 (W.D.Va. 2005)); *see also Wilmer v. Astrue*, 2008 WL 112045, at *6 (W.D. Va. 2008) (stating if claimant "is of the view that he is now disabled based on deterioration after the ALJ's...decision..., his remedy is to file a new application under the regulations applicable for such applications") (citing 20 C.F.R. §§ 404.620(a)(2), 416.330(b)). Claimant's argument is not persuasive.

## II. The ALJ did not err in evaluating the opinion of Claimant's treating physician.

Claimant contends the ALJ should have accorded controlling weight to the opinion of Claimant's treating physician, Carl Smith, M.D. Pl.'s Mem. at 6-8. This Court disagrees.

The opinion of a treating physician is generally entitled to great weight. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (per curiam). The underlying rationale is that the

---

Dr. Smith noted that Claimant "is doing some activities, but not much exercise [and]...has a grandchild at home that is 1-year-old and she wants to play with more, but she just can't." *Id.* During Claimant's February 2007 visit, Dr. Smith noted Claimant's drop-arm test was negative, range of motion of the arms was within normal limits, a tender neck (right side more than left), mild muscle tightness, lack of trigger points and her reflexes were symmetric and equal in the upper extremities. (R. 585).

11

opinion of a treating physician "reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Id.* However, appropriate support in the record must warrant deference to the treating physician's opinion. In particular, a treating physician's opinion on the nature and severity of the claimed impairment is accorded controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(d)(2). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (citation omitted) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence"). In fact, an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source...if he sufficiently explains his rationale and if the record supports his findings." *Wireman v. Barnhart*, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). The regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. § 416.927(d)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

12

The medical opinion at issue appeared in a physical residual functional capacity assessment dated 9 November 2004, wherein Dr. Smith indicated Claimant's RFC was more limited than that found by the ALJ. (R. 25, 431-34). As the ALJ acknowledged, Dr. Smith explained Claimant was capable of sedentary work only. (R. 25, 440). However, noting that Claimant's 11 March 2005 cervical and lumbar spine MRIs showed no abnormalities with the exception of moderate stenosis and mild degenerative changes, respectively, the ALJ did not accord Dr. Smith's opinion controlling weight, explaining the sedentary work restriction was inconsistent with the MRI findings.[5] (R. 23 ¶4, 24 ¶ 5, 25, 528). As observed by the ALJ, Dr. Smith's treatment notes indicated Claimant significantly improved following her trigger point injections for pain (R. 461), and that she had a full range of motion of the cervical and lumbar areas (R. 457, 532 ), a negative straight leg raise test (R. 532) and equal muscle strength (R. 450). (R. 24).

The absence of a sufficient rationale for the opinion and the inconsistency between the opinion and other medical evidence in the record reasonably downgraded the true evidentiary value of Dr. Smith's opinion. Additionally, the ALJ complied with S.S.R. 96-2p by making his decision sufficiently specific for subsequent viewers to understand the weight accorded Dr. Smith's opinion and the reasons for said weight. *See Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *2 (4th Cir. 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up

---

[5] Claimant contends the ALJ substituted her medical judgment for that of Dr. Smith. *See* Pl.'s Mem. at 13. In particular, Claimant contends that the ALJ does "not have the expertise to substitute her judgment about the meaning of the MRI results for [Dr. Smith's opinion]...[and that Dr. Smith's] interpretation of the test results...[is] superior to the ALJ's." *Id.* However, the "final responsibility for deciding [a claimant's RFC] is reserved to the [ALJ]." 20 C.F.R. § 416.927(e)(2).

13

specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ was within his discretion in not giving controlling weight to Dr. Smith's opinion.

## II. The ALJ improperly assessed Claimant's credibility.

Claimant contends the ALJ failed to analyze her subjective complaints of pain in the manner mandated by *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). *See* Pl.'s Mem. at 14-16. This Court agrees.

*Craig* requires an ALJ to evaluate subjective claims of pain and other symptoms according to a two-step process. *Craig,* 76 F.3d at 594; *see also Hines v. Barnhart*, 453 F.3d 559, 564-65 (4th Cir. 2006). First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* at 594; *see also* S.S.R. 96-7p, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of that pain, and the extent to which it affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including a claimant's statements about her pain, medical history, medical signs, laboratory findings, any objective medical evidence of pain, evidence of a claimant's daily activities, specific descriptions of pain, any medical treatment taken to alleviate the pain and "any other evidence relevant to the severity of the impairment." *Id.*; *see also* 20 C.F.R. § 416.929(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3. Objective evidence of pain is not required for entitlement to benefits, although it is appropriately considered where it appears in the record. *See id.* at 595-96.

14

In *Craig*, the ALJ found that the claimant had severe impairments of the musculoskeletal system, but that her subjective claims of pain were not credible. *Id* at 589. The Fourth Circuit reversed and remanded the case because the ALJ had turned immediately to assessing the claimant's credibility, but without first expressly resolving the threshold question of whether the claimant had a medical impairment which reasonably might be expected to cause the kind of pain she alleged. *Id.* at 596. The ALJ in this case likewise found that Claimant had a number of severe impairments, and determined Claimant's claims of subjective pain were "inconsistent with the objective medical evidence such that she would not be precluded from all work," but without performing the first step of the *Craig* test. (R. 24).

Defendant contends Claimant's argument - that *Craig* imposes an absolute requirement to expressly apply step one of the credibility - is "completely a form over substance argument." Mem. in Supp. of Def.'s Mot. for J. on the Pleadings at 13 ("Def.'s Mem."). Defendant contends the ALJ satisfies *Craig* if, considering the decision in its entirety, a claimant's medically-determinable impairments which could cause pain have been identified somewhere in the decision with specificity. *See id.* at 14. While Defendant's position is well-taken, this Court finds that the better approach is applying the analysis as established in *Craig*. *See Bradley v. Barnhart*, 463 F. Supp. 2d 577, 582 (S.D. W. Va. 2006) (remanding case for ALJ's failure to address step one despite characterizing defendant's position that such failure is harmless as not "illogical"); *see also Hill v. Comm'r of Soc. Sec.*, 49 F. Supp. 2d 865, 870 (S.D. W. Va. 1999) (remanding case for failure to complete step one despite defendant's contention that such action would be a waste of judicial and administrative resources). Accordingly, remand is necessitated in this case by the ALJ's failure to perform the step-one analysis. *See Gavigan v. Barnhart*, 261

15

F. Supp. 2d 334, 339 (D. Md. 2003) (noting remand is necessary even though the performance of the step two analysis by the ALJ suggests he reached a conclusion with respect to step one "because the court cannot speculate as to the ALJ's reasoning") *(citing Cook v. Heckler*, 783 F.2d. 1168, 1174 (4th Cir. 1986) (remanding, in part, for failure to explain findings adequately)); *see also Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (explaining that the "duty of explanation is always an important aspect of the administrative charge, and it is especially crucial in evaluating pain").

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be GRANTED, Defendant's Motion for Judgment on the Pleadings be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 6th day of October, 2008.

Robert B. Jones, Jr.
United States Magistrate Judge